UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| JUMPTASTICS, LLC, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) Civil Action No. 6:21-CV-172-CHB-HAI |
| | ) |
| v. | ) |
| | ) **MEMORANDUM OPINION** |
| AUTO-OWNERS INSURANCE | ) **AND ORDER** |
| COMPANY, *et al.*, | ) |
| | ) |
| Defendants. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This flood insurance dispute is before the Court on the motions for summary judgment filed by Defendants Lakeland Group, Inc., *d/b/a* Lakeland Insurance Group, and Krista Slade Russell, [R. 38], and Defendant Auto-Owners Insurance Co., [R. 39]. The motions have been fully briefed by the Defendants and by Plaintiffs Jumptastics, LLC, and Danielle Davis. *See* [R. 40]; [R. 41]; [R. 42]; [R. 43]. For the following reasons, Lakeland and Russell's Motion [R. 38] will be **GRANTED** in part and **DENIED** in part, and Auto-Owners' Motion [R. 39] will be **GRANTED.**

**I.   Background**

The facts in this case are relatively simple, even if the legal framework surrounding flood insurance claims is quite technical. Davis formed Jumptastics, an entertainment venue with inflatables, in 2017. *See* [R. 38-2 (Articles of Incorporation)]; [R. 38-4, p. 29 (Davis deposition)].[1] In 2020, Jumptastics sought to purchase the property in Somerset, Kentucky, that it had leased

---

[1] The record contains excerpts of several individuals' depositions. *See, e.g.*, [R. 38-4]; [R. 39-4]. Some of the deposition transcripts contain four pages of testimony per document page; for these exhibits, the Court will cite to the deposition page number, and line number, as necessary.

since 2017. *See* [R. 38-3 ("Flood Insurance Policy Packet")]; [R. 38-4, pp. 14:20–21]. Davis's bank required a flood insurance policy for the building before it would close on the loan.[2] *See* [R. 38-4, pp. 16–18]. Davis went to Lakeland to source the policy; she and her husband had used Lakeland to source many policies in the past and had often used Russell as their agent. *See id.* at 41:25–42:24, 95–96 (Davis: "I think we started doing business with Lakeland like in 2013, I want to say, and we purchased policies for Davis Communications. . . . [T]hen we also have purchased Jumptastics, home, vehicle; pretty much every policy that we have, on every business.").

Russell was a licensed insurance agent with Lakeland, and she assisted Davis in obtaining coverage for the property. *See id.* at 49; *see also* [R. 38-1, p. 2]. Because Davis did not know all of the requirements for the type of policy that she needed, Davis instructed Russell to work with her bank to determine the type of coverage needed for the property, and Russell was "the one that did the application process." *See* [R. 38-4, pp. 18:21–25, 49:11–19, 57:7–58:7] (Davis: "[Krista] asked me what flood coverage I needed. I told her I was not for sure exactly. I just thought flood coverage was flood coverage, and she said she had never written a flood policy before, but that I could put her in contact with Josh and she would find out what the bank was requiring . . . ."). Throughout this process, Russell submitted documents on Davis's behalf, including elevation building determinations. *See* [R. 40-4 (excerpts from Russell's deposition and elevation certificates)].

Ultimately, Jumptastics obtained a policy through Auto-Owners, underwritten by Torrent Corporation. *See* [R. 38-3 ("Flood Insurance Policy Packet")]. Auto-Owners issued Jumptastics a standard flood insurance policy ("SFIP"), pursuant to the National Flood Insurance Program

---

[2] The loan on the property was actually in the name of Davis Communications, a company Davis owned with her husband. *See* [R. 38-4, pp. 11:6, 15:21–22]. Jumptastics then leased the property from Davis Communications. *See id.* at 21:7–8.

("NFIP"). *See id.*; [R. 39-2, p. 2 ¶ 3 (Brandeberry affidavit)]. Such policies "promise indemnification for damage caused by flood or rising waters." *Neuser v. Hocker*, 246 F.3d 508, 509 (6th Cir. 2001). The policy term was for July 1, 2020, to July 1, 2021, and provided limits of $165,000.00 for building damages and $25,000.00 for contents damages, each subject to a $5,000.00 deductible. *See* [R. 39-2, p. 3 ¶ 9].

On February 28, 2021, Somerset had a major flood, and approximately eleven inches of water came into Jumptastics' building. *See* [R. 38-4, pp. 27:24–25, 29:25] (Davis: "I was told it was a hundred-year flood that happened here in this area."). On March 1, 2021, the Plaintiffs reported a claim under their policy for damages to the property resulting from the flooding. *See* [R. 39-2, p. 4 ¶ 10]. Auto-Owners appointed an independent adjuster to inspect the property and adjust the claim as afforded under the policy's provisions. *See id.* (citing Article VII(J)(7)(8)). The adjuster recommended, and Auto-Owners verified, that "the total amount of SFIP covered and payable flood damage totaled $19,143.57." *Id.* This finding was based on the determination that the policy had originally been incorrectly rated for being on a slab, rather than a basement. *See id.* at ¶ 11.

Relevant here, during the claims process, the independent adjuster discovered that the property did not fit the information provided in Jumptastics' application; as a result, Auto-Owners hired an engineer to provide the proper building description and rating information for Auto-Owners to determine the rating and coverage for the property. *Id.* "Keystone Engineering discovered and confirmed that the floor surface of the lower level of Plaintiffs' property was below exterior grade on all sides of the building, and therefore, the Plaintiffs' building has a basement" rather than a slab. *See id.* (citing Article II(B)(5)). Importantly, policy "coverage of certain specific items of property in a basement is limited." *Id.* (citing Article III(A)(8) and (B)(3)).

Therefore, Auto-Owners applied the basement coverage limitations to the areas of Jumptastics' building that met the policy definition of "basement," and the "Plaintiffs' claim to recover for flood damaged building and contents items that exceeded the limited coverage were denied on June 7, 2021." *Id.* at ¶ 12.

Notably, despite extensive communications among all parties, the Plaintiffs never timely filed a proof of loss as required by the policy. *See id.* at 4–5 ¶¶ 10, 13 ("[D]espite repeated requests to Plaintiffs, including but not limited to a correspondence issued on April 8, 14, & 28, 2022, and June 3 & 7, 2022, that Plaintiffs return executed proofs of loss required by their SFIP, Plaintiffs never complied. Therefore, Plaintiffs' claim was closed without payment."). Instead, Davis refused to sign the proof of loss offered by Auto-Owners for $19,143.57 that was based on the "basement" determination. *See id.* at 5 ¶ 13; [R. 38-4, pp. 35–39]. She does claim, however, to have signed and submitted on May 28, 2021, the initial report of the adjuster without the basement limitation. *See* [R. 40-8 (Davis affidavit)]. Davis's affidavit to this effect failed to attach the initial report of the adjuster.

On September 29, 2021, Davis and Jumptastics filed suit against Auto-Owners, Lakeland, and Russell in Pulaski Circuit Court. *See* [R. 1-1]. The Complaint contains four causes of action: breach of contract against Auto-Owners (Claim I); failure to procure insurance against Lakeland and Russell (Claim II); failure to advise against Lakeland and Russell (Claim III); and violation of the Kentucky Unfair Claims Settlement Practices Act, KRS § 304.12-230 against all Defendants (Claim IV). *See id.* at 4-7. The Plaintiffs seek certain types of damages as relief. *See id.* at p. 7 ¶¶ 1–8.

On October 6, 2021, Auto-Owners removed the action to this Court based primarily on the exclusive federal jurisdiction over claims that challenge the disposition of claims under a SFIP.

*See* [R. 1] (discussing the NFIP scheme under 42 U.S.C. § 4072, federal question jurisdiction under 28 U.S.C. § 1331, and 28 U.S.C. § 1337). Specifically, because Claims I and IV challenge the "handling and denial of coverage under the SFIP," these claims are within the exclusive jurisdiction of the federal courts. *See Gibson v. Am. Bankers Ins. Co.*, 289 F.3d 943, 946, 949–50 (6th Cir. 2002) ("We agree with the district court that plaintiffs' claims disputing the handling and denial of coverage under the SFIP were within the exclusive jurisdiction of the federal district court."); *see also* [R. 1-1, p. 4 ¶ 22] (Claim I: "Auto-Owners Insurance Company breached its contract with Plaintiffs by not complying with the terms and conditions of the Policy."); [R. 1-1, p. 5 ¶ 34] (Claim IV: "Defendants, Auto-Owners Insurance Company, Lakeland Group, Inc., and Krista Slade Russell, in adjusting and evaluating the Plaintiffs' claim have violated the Unfair Claims Settlement Practices Act, KRS § 304.12-230 ('UCSPA')."). The Plaintiffs' remaining two claims, against Lakeland and Russell only, alleging failure to procure insurance and failure to advise under Kentucky law are before the Court on supplemental jurisdiction under 28 U.S.C. § 1367.

All Defendants filed Answers, [R. 6]; [R. 12], and the parties proceeded to engage in discovery. *See generally* [R. 25 (minute entry order extending expert disclosure deadlines and discussing progress of discovery)]. On November 14, 2022, all Defendants filed motions for summary judgment regarding the claims in which they are named. [R. 38]; [R. 39]. The motions have each been fully briefed and are ripe for review. *See* [R. 40]; [R. 41]; [R. 42]; [R. 43].

**II.    Legal Standard**

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, the Court must construe the evidence

and draw all reasonable inferences from the underlying facts in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009). The Court may not "weigh the evidence and determine the truth of the matter" at the summary judgment stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

The initial burden of establishing that no genuine dispute of material fact exists rests with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies this burden, the burden then shifts to the nonmoving party to produce "specific facts" showing a "genuine issue" for trial. *Id.* at 324–25. When, as here, defendants move for summary judgment, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Where "a party fails to support an assertion of fact or fails to properly address another party's assertion of fact," the Court may treat the fact as undisputed. Fed. R. Civ. P. 56(e)(2). A fact is "material" if the underlying substantive law identifies the fact as critical. *Anderson*, 477 U.S. at 248. Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A "genuine" issue exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249.

### III. Analysis

The National Flood Insurance Act (the "NFIA") "was enacted to provide a unified national program to reduce and avoid losses due to flood by making reasonably priced flood insurance

available for residential and commercial properties." *Gibson*, 289 F.3d at 946. The Sixth Circuit has explained:

> The Federal Emergency Management Administration (FEMA) administers the National Flood Insurance Program. 42 U.S.C. § 4081(a). Congress authorized FEMA to "prescribe regulations establishing the general method or methods by which proved and approved claims for losses may be adjusted and paid for any damage to or loss of property which is covered by flood insurance." 42 U.S.C. § 4019. FEMA established a comprehensive regulatory scheme setting forth the rights and responsibilities of insureds and insurers under the National Flood Insurance Program. *See* 44 C.F.R. Pts. 61–78 (2000). Under regulatory authority granted by Congress in 42 U.S.C. § 4081(a), FEMA created the "Write Your Own" (WYO) program, which authorizes private insurance companies, such as defendant, to issue SFIPs.

*Id.* Importantly, "[f]ederal law alone governs suits that address the handling, denial, or other disposition of SFIP claims." *Oaks v. Allstate Ins. Co.*, Civil No. 05-191-REW, 2006 WL 3328179, at *4 (E.D. Ky. Nov. 14, 2006) (citing *Gibson*, 289 F.3d at 949–50; *Berger v. Pierce*, 933 F.2d 393, 397 (6th Cir. 1991)) ("[F]ederal common and statutory law preempts state principles of contract law for purposes of the interpretation of NFIP policies."). This means courts cannot apply "state contract or tort law" to any claims that challenge the disposition of a claim under a SFIP. *See Oaks*, 2006 WL 3328179, at *4.

The jurisdiction and statute of limitations for claims made under the NFIA are defined by statute:

> In the event the program is carried out as provided in section 4071 of this title, the Administrator shall be authorized to adjust and make payment of any claims for proved and approved losses covered by flood insurance, and upon the disallowance by the Administrator of any such claim, or upon the refusal of the claimant to accept the amount allowed upon any such claim, the claimant, within one year after the date of mailing of notice of disallowance or partial disallowance by the Administrator, may institute an action against the Administrator on such claim in the United States district court for the district in which the insured property or the major part thereof shall have been situated, and original exclusive jurisdiction is hereby conferred upon such court to hear and determine such action without regard to the amount in controversy.

42 U.S.C. § 4072; *Gibson*, 289 F.3d at 946-47. Based on this language, and the interest in uniformity under the regulatory scheme, the Sixth Circuit has held "that federal district courts have exclusive jurisdiction over suits under NFIA," including those "against a WYO insurance company arising out of a disputed flood insurance claim."[3] *Id.* at 947. Claims that "are in essence over the *disposition* of the SFIP claim" are preempted by the NFIA, as discussed above, and are "also within the exclusive jurisdiction of the federal courts." *See id.* at 949–50 (emphasis added); *see also id.* ("Congress and FEMA have regulated the claims adjustment process and judicial review of coverage claims under flood insurance policies. Uniformity of decision requires the application of federal law and precludes the enforcement of state laws on the same subject."); *Bruinsma v. State Farm Fire & Cas. Co.*, 410 F. Supp. 2d 628, 632 (W.D. Mich. 2006) ("In *Gibson*[], the Sixth Circuit Court of Appeals held that the NFIA preempts all state-law causes of action that are based on the handling or disposition of claims under the standard flood insurance policy.").

However, claims regarding the *procurement* of a policy are not preempted. *See Harris v. Nationwide Mut. Fire Ins. Co.*, 832 F.3d 593, 597 (6th Cir. 2016) ("We . . . hold that the NFIA does not preempt policy-procurement claims such as plaintiffs'."). Instead:

> Damages stemming from policy-procurement claims, unlike those arising from policy-coverage claims, are not "flood policy claim payments." That being so, the Federal Treasury bears no responsibility for damages awarded in policy-procurement actions. Policy-procurement damages, therefore, pose no danger to the federal interests prompting preemption in the claims-handling context, i.e., "reduc[ing] fiscal pressure on federal flood relief efforts." Moreover, general conflict-preemption principles do not compel barring state-law policy-procurement claims. It is possible to comply with both state tort laws and FEMA regulations, and state laws regarding misrepresentation and breach of fiduciary duty in the policy-procurement process do not "stand[ ] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in enacting the NFIA.

---

[3] Auto-Owners is "a WYO Program Carrier participating in the U.S. Government's NFIP pursuant to the National Flood Insurance Act of 1968." [R. 39-2, p. 2 ¶ 2].

*Id.* (internal citations omitted). This means that procurement claims may proceed to be evaluated under state law. *Id.* ("Because plaintiffs were potential future policyholders at the time the alleged wrongs occurred, to the extent that their state-law claims arise solely from the policy-procurement process, the NFIA does not preempt them. Although we express no view on the merits of plaintiffs' claims under Tennessee law, they are claims which, if proven, entitle plaintiffs to relief.").

Through their Complaint, the Plaintiffs plead various causes of action relating to their flood insurance policy issued under the NFIA. *See generally* [R. 1-1 (alleging claims for breach of contract, failure to procure insurance, failure to advise, and unfair claims settlement)]. Two of those claims—Claim I for breach of contract and Claim IV for a Kentucky statutory claim—"are preempted by NFIA and are within the exclusive jurisdiction of the federal courts" because they relate to "the handling and denial of coverage under the SFIP." *Gibson*, 289 F.3d at 946, 950; *see also* [R. 1-1, pp. 4–7]. Conversely, the other two claims solely against Lakeland and Russell—Claim II for failure to procure insurance and Claim III for failure to advise, both under Kentucky law—fall outside the exclusive jurisdiction of this Court because they relate to the *procurement* of the SFIP policy, not its disposition. *See Harris*, 832 F.3d at 597.

### A. Breach of Contract Claim Against Auto-Owners

The Plaintiffs first allege that Auto-Owners breached its contract with them by not complying with the terms and conditions of the flood insurance policy. *See* [R. 1-1, p. 4 ¶¶ 20–23]. As stated above, because this claim challenges Auto-Owners' disposition under the SFIP, this Court has exclusive jurisdiction over the claim under the NFIA. *See Gibson*, 289 F.3d at 947. Auto-Owners now moves the Court for summary judgment on this claim, arguing that:

> The undisputed evidence establishes that Plaintiffs failed to submit to Auto-Owners, on or before the FEMA-prescribed deadline, a Proof of Loss with

- 9 -

> competent supporting documentation, as specifically required by Plaintiffs' NFIP Standard Flood Insurance Policy ("SFIP") at Articles VII(J)(3) and VII(J)(4), to recover the U.S. treasury dollars now sought in this lawsuit. Because Plaintiffs failed to satisfy the conditions precedent provisions of the SFIP found at Article VII(R), all of Plaintiffs' claims against Auto-Owners seeking payment of federal flood benefits fail as a matter of law and must be dismissed with prejudice.

[R. 39, pp. 1–2]; *see also* [R. 39-1, p. 15] ("In this matter, Plaintiffs failed to comply with Articles VII(J)(3), VII(J)(4) and VII(R) of the SFIP as set forth herein above. Thus, Plaintiffs' claims fail as a matter of federal law because Plaintiffs failed to satisfy the conditions precedent to filing this lawsuit and are thereby divested of the right to bring this lawsuit.").[4]

Articles VII(J)(3) and VII(J)(4) of the SFIP read as follows:

> J. Requirements in Case of Loss
>
> In case of a flood loss to insured property, you must:
>
> . . .
>
> 3. Prepare an inventory of damaged property showing the quantity, description, actual cash value, and amount of loss. Attach all bills, receipts, and related documents;
>
> 4. Within 60 days after the loss, send us a proof of loss, which is your statement of the amount you are claiming under the policy signed and sworn to by you, and which furnishes us with the following information:

---

[4] Article VII(R) provides:

> You may not sue us to recover money under this policy unless you have complied with all the requirements of the policy. If you do sue, you must start the suit within one year of the date of the written denial of all or part of the claim, and you must file the suit in the United States District Court of the district in which the insured property was located at the time of loss. This requirement applies to any claim that you may have under this policy and to any dispute that you may have arising out of the handling of any claim under the policy.

[R. 39-4, p. 22]. In its Reply, Auto-Owners clarifies that it does not argue the failure of the Plaintiffs to properly file suit in this Court "in and of itself is the only failure that supports summary judgment." [R. 43, p. 6]. Instead, Auto-Owners argues that the Plaintiffs' claims against it "must be dismissed due to Plaintiffs' failure to file suit in the proper U.S. District Court in violation of SFIP Article VII (R) in addition to their failure to submit a timely properly-documented proof of loss and the requisite documentation to support payment of federal flood benefits all in violation SFIP Articles VII(J)(3) and VII(J)(4) and thereby failure to satisfy conditions precedent in violation of SFIP Article VII(R)." *See id.*

    a. The date and time of loss;

    b. A brief explanation of how the loss happened;

    c. Your interest (for example, "owner") and the interest, if any, of others in the damaged property;

    d. Details of any other insurance that may cover the loss;

    e. Changes in title or occupancy of the insured property during the term of the policy;

    f. Specifications of damaged buildings and detailed repair estimates;

    g. Names of mortgagees or anyone else having a lien, charge, or claim against the insured property;

    h. Details about who occupied any insured building at the time of loss and for what purpose; and

    i. The inventory of damaged property described in J.3. above.

[R. 39-4, pp. 19–20]. Under these provisions, "[i]f payment is to be made on an insurance claim brought under a Standard Policy, the claimant must file a proof of loss form within 60 days of the loss." *Neuser*, 246 F.3d at 510. And "federal courts have consistently held that the proof of loss requirement is to be strictly enforced." *Id.* at 511–12; *see also Oaks*, 2006 WL 3328179, at *4 (citing *Neuser*, 246 F.3d at 511–12) ("This Circuit demands strict compliance with the proof of loss requirement under the SFIP, including the 60 day limitation period.") (granting summary judgment to defendants on breach of contract claim challenging disposition under a SFIP). Therefore, the Plaintiffs' breach of contract claim against Auto-Owners rises or falls simply on whether they timely and correctly submitted a proof of loss, as required by the SFIP policy.

    On this record, the Plaintiffs have failed to create a genuine issue of material fact that they did so. Indeed, in their brief, the Plaintiffs wholly fail to address the sixty-day proof of loss requirement at all, or how any submission they purportedly made was timely.

The flooding of Jumptastics' building occurred on February 28, 2021, meaning that, under the policy's terms, the proof of loss had to be submitted by April 29, 2021, unless the Federal Insurance Administrator issued a valid waiver. *See Neuser*, 246 F.3d at 511–12 (quoting *Flick v. Liberty Mut. Fire Ins. Co.*, 205 F.3d 386, 391–92 (9th Cir. 2000)) ("[A] claimant under a standard flood insurance policy may not avoid strict enforcement of the 60 day sworn proof of loss requirement, except through a valid waiver by the Federal Insurance Administrator."). No waiver was issued in this case, so a proof of loss was required to be submitted by April 29, 2021. *See* [R. 39-2, p. 5 ¶ 14] ("[N]o written waivers have been issued by FEMA for the Plaintiffs' flood loss.").

Here, *by the Plaintiffs' own evidence*, the document they purportedly submitted to satisfy the proof of loss requirement was not provided to Lakeland until May 28, 2021.[5] *See* [R. 40-1, p. 9] ("Plaintiffs assert that they signed the initial report of independent adjuster concerning Plaintiffs' proof of Loss, and submitted that to Lakeland on or about *May 28, 2021* via Dropbox.") (emphasis added). In other words, the document on which the Plaintiffs rely to satisfy their proof of loss requirement was untimely filed. Because the Plaintiffs are held to strict compliance with the 60-day sworn proof of loss requirement (which ran April 29, 2021), and because the Plaintiffs did not strictly comply in this case, their breach of contract claim against Auto-Owners fails as a matter of federal law. *See Neuser*, 246 F.3d at 511–12 (requiring strict compliance for the 60-day

---

[5] The policy included the following provision:

> At our option, we may accept the adjuster's report of the loss instead of your proof of loss. The adjuster's report will include information about your loss and the damages you sustained. You must sign the adjuster's report. At our option, we may require you to swear to the report.

*See* [R. 39-4, p. 20 (Article VII(J)(9))]. The Plaintiffs rely on this provision and maintain that "the insured did sign and submit, consistent with policy provisions, the initial report of the adjuster without the basement limitation." *See* [R. 40-1, p. 2]. However, the Plaintiffs have not produced the actual document they rely on to satisfy the proof of loss requirement. But even assuming such a document was submitted, it was still untimely.

sworn proof of loss requirement); *see also Gowland v. Aetna*, 143 F.3d 951, 955 (5th Cir. 1998) ("We find that the theories of substantial compliance, waiver, and equitable estoppel are inapplicable to the facts presented herein."); *Oaks*, 2006 WL 3328179, at *4. Auto-Owners is therefore entitled to summary judgment on this claim.

### B. Unfair Claims Settlement Statute

In their Complaint, the Plaintiffs allege the Defendants violated the Kentucky Unfair Claims Settlement Practices Act through their actions "in adjusting and evaluating the Plaintiffs' claim." *See* [R. 1-1, p. 5 ¶ 34]. Under binding Sixth Circuit precedent, such claims are preempted because they "are in essence over the disposition of the SFIP claim." *See Gibson*, 289 F.3d at 949–50. Indeed, the Sixth Circuit addressed *exactly* such a statutory claim in *Gibson* and found it preempted. *See id.* (holding claim that defendant violated the Kentucky Unfair Claims Settlement Practices Act, KRS 304.12-230, "by failing to act promptly on communications, refusing to pay the claim, failing to affirm coverage, and not attempting a good faith settlement," was preempted by federal law); *Missi v. State Farm Fire & Cas. Co.*, No. 3:12-CV-265, 2013 WL 2896831, at *4 (W.D. Ky. June 12, 2013) ("We turn to the two other claims, for violation of the Kentucky Unfair Claims Settlement Practices Act and common-law bad faith. As the Missis concede, Sixth Circuit authority establishes that those state law claims have been preempted by federal law. Thus, those two claims will be dismissed.") (citing *Gibson*, 289 F.3d at 949–50). The Plaintiffs have offered no case law to contradict application of the unambiguous preemption rule to their claims based on the Kentucky statute in this case.

Further, although the Plaintiffs attempt to argue in their response that their "claims and omissions against Auto-Owners arise from the insurer's acts and omissions regarding ***issuance*** of the policy," *see* [R. 40-1, p. 13 (emphasis in original)], this is the first time the Plaintiffs have

alleged a *procurement* claim against Auto-Owners.[6] Instead, the language of the breach of contract and the Kentucky statutory claims in the Complaint can only be fairly characterized as relating to any defendants' actions regarding the *determination* under the policy. *See* [R. 1-1, pp. 4 ¶¶ 20–23, 5-7 ¶¶ 33–46]. The law does not permit claims to be added or for a complaint to be amended through a response to a motion for summary judgment, and the Court will therefore not reach the substance of a procurement claim against Auto-Owners. *See Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 789 (6th Cir. 2005) (affirming district court's refusal to consider a claim made for the first time in response to a motion for summary judgment because plaintiff could have moved to amend her complaint before dispositive motions were filed).

Similarly, *Gibson* forecloses any attempts by the Plaintiffs to argue that the statute of limitations for any unpled federal cause of action has not run. *See Gibson*, 289 F.3d at 946. Jurisdiction and the applicable statute of limitations for a claim on the SFIP are codified, as stated above:

> In the event the program is carried out as provided in section 4071 of this title, the Administrator shall be authorized to adjust and make payment of any claims for proved and approved losses covered by flood insurance, and upon the disallowance by the Administrator of any such claim, or upon the refusal of the claimant to accept the amount allowed upon any such claim, the claimant, within one year after the date of mailing of notice of disallowance or partial disallowance by the Administrator, may institute an action against the Administrator on such claim in the United States district court for the district in which the insured property or the major part thereof shall have been situated, and original exclusive jurisdiction is hereby conferred upon such court to hear and determine such action without regard to the amount in controversy.

42 U.S.C. § 4072; *see also* [R. 39-4, p. 22] (Article VII(R)).

In this case, the Plaintiffs' claims under the SFIP were denied in June 2021. *See* [R. 39-2, p. 4 ¶ 12]. The Plaintiffs then chose to file suit in *state* court. *See* [R. 1-1]. That they chose to do

---

[6] The Plaintiffs do raise two procurement claims in their complaint, but against only Lakeland and Russell.

- 14 -

so does not toll the statute of limitations in this case, which now ran more than a year ago. Instead, here, as in *Gibson*, "[i]n light of the lack of any judicial authority supporting the filing of plaintiffs' suit in state court and given that plaintiffs were explicitly put on notice of the need to sue defendant[s] in federal court through the specific contractual language of the SFIP, there are no exceptional circumstances that justify the tolling of the statute of limitations." *See Gibson*, 289 F.3d at 948. As in *Gibson*, the Plaintiffs' statutory claim under the Kentucky Unfair Claims Settlement Practices Act is "barred by the statute of limitations."[7] *Id.* at 950.

Accordingly, all Defendants are entitled to summary judgment on the Plaintiffs' claims based on the Kentucky Unfair Claims Settlement Practices Act.

### C. Remaining State Law Claims Against Lakeland and Russell

The Court has determined that the Defendants are entitled to summary judgment on the Plaintiffs' claims that challenge the disposition of claims under the SFIP (Claim I and Claim IV). *See supra* § III(A)–(B). This leaves only the Plaintiffs' claims against Lakeland and Russell under Kentucky law for failure to procure insurance and for failure to advise.[8] *See* [R. 1, pp. 4–5]. Because these claims relate to the *procurement* (rather than disposition) of the policy at issue, they are not preempted by federal law, nor are they under the exclusive jurisdiction of this Court. *See*

---

[7] In their Response, the Plaintiffs did not address Lakeland and Russell's statute of limitations argument and simply submit that "[t]here is no contention that this action was untimely." *See* [R. 40-1, p. 11]. Such a failure to respond can be viewed as conceding the argument. *See Palma v. Johns*, 27 F.4th 419, 429 n.1 (6th Cir. 2022) ("Generally, at the summary judgment stage, the non-moving party can forfeit an argument if they fail to respond to the *moving party's arguments*.") (emphasis in original); *see also Cunningham v. Tenn. Cancer Specialists, PLLC*, 957 F. Supp. 2d 899, 921 (E.D. Tenn. 2013) ("It is well understood that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.") (cleaned up). Relatedly, Auto-Owners does not explicitly challenge the breach of contract claim on statute of limitations grounds, but the same analysis would appear to apply to that claim.

[8] Auto-Owners did not rely on diversity jurisdiction as a ground for removal, *see* [R. 1]; similarly, the Complaint does not suggest complete diversity of citizenship exists. *See* [R. 1-1].

*Harris*, 832 F.3d at 597. Still, the Court considers whether to exercise supplemental jurisdiction over these claims.

Under 28 U.S.C. § 1367(c), the Court may decline to exercise supplemental jurisdiction *over a claim* if: (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. *See Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996), *amended on denial of reh'g,* No. 95-5120, 1998 WL 117980 (6th Cir. Jan. 15, 1998) ("A district court has broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims."). On this record, the Court will decline to exercise jurisdiction over the Plaintiffs' failure to procure insurance and failure to advise claims.

First, these claims are based on state law, meaning they do not implicate the federal interests under the NFIA that the Plaintiffs' claims challenging the disposition of the SFIP policy do. *See supra* §III(A)–(B). Second, the Court has disposed of all the claims over which it has exclusive jurisdiction in this case, and "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *See Musson*, 89 F.3d at 1254–55; *see also Dunn v. Adams, Stepner, Woltermann & Dusing, PLLC*, No. CV 19-4-DLB-CJS, 2021 WL 3410042, at *8 (E.D. Ky. Aug. 4, 2021) (declining to exercise supplemental jurisdiction over state law claim after granting defendant's motion for summary judgment on federal claim). Third, although the Court *could* exercise supplemental jurisdiction over the remaining state law claims in this action, the Court finds that "that comity and the interest in judicial economy favor[] remand" over the

Plaintiffs' procurement claims against Lakeland and Russell. *See Packard v. Farmers Ins. Co. of Columbus Inc.*, 423 F. App'x 580, 584 (6th Cir. 2011). For these reasons, the Court declines to exercise supplemental jurisdiction over the Plaintiffs' failure to procure and failure to advise claims against Lakeland and Russell and will remand them to Pulaski Circuit Court.

IV.  **Conclusion**

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. Defendants Lakeland and Russell's Motion for Summary Judgment [**R. 38**] is **GRANTED** in part and **DENIED** in part. Specifically, the motion is **GRANTED** with respect to Claim IV and these Defendants are entitled to judgment on this claim. The motion is **DENIED** with respect to the Plaintiffs' remaining state law claims (Claims II and III).

2. The Court **DECLINES** to exercise supplemental jurisdiction over the Plaintiffs' remaining state law claims (Claims II and III) and therefore **REMANDS** those claims to Pulaski Circuit Court.

3. Defendant Auto-Owners' Motion for Summary Judgment [**R. 39**] is **GRANTED**, and Auto-Owners is entitled to judgment on Claim I and Claim IV.

4. A separate judgment shall issue.

This the 29th day of September, 2023.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY